UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA

UNITED STATES OF AMERICA

CRIMINAL ACTION

VERSUS

NO. 11-105-JJB

VERNA S. AGE, ET AL.

# RULING ON DEFENDANT'S RENEWED MOTION FOR JUDGMENT OF ACQUITTAL AND MOTION FOR NEW TRIAL

This matter is before the Court on Defendant Verna S. Age's ("Age") Renewed Motion for Judgment of Acquittal (Doc. 158) and Motion for New Trial. (Doc. 157). Plaintiff United States of America ("Government") has filed an opposition. (Doc. 163). Oral argument is not necessary. For the reasons herein, Defendant's Renewed Motion for Judgment of Acquittal and Motion for New Trial are DENIED. (Docs. 158 and 157).

I.

On October 12, 2012, a jury returned a verdict on Count 2 of the indictment convicting Age of violating 18 U.S.C § 371, which is conspiracy to defraud the United States. Specifically, Age was convicted of violating 18 U.S.C § 371 by conspiring to violate the Anti-Kickback statute, which is codified at 42 U.S.C. § 1320a-7b. The jury was unable to return a verdict on Count 1, which was conspiracy to commit health care fraud, 18 U.S.C. § 1349.

1

In her renewed motion for judgment of acquittal, Age argues that she was convicted of violating 42 U.S.C. § 1320a-7b(b)(2)[1] for a payment from South Louisiana Home Health Care, Inc. ("SLHHC") to a patient recruiter, Mary Johnson ("Johnson"). Age also asserts that the jury was unable to reach a verdict on Count 1, which Age describes as conspiracy to defraud the United States. As a threshold matter, this demonstrates Age's faulty understanding of the charges against her and for what Age was actually convicted. Age was charged and convicted of *conspiring* to violate the Anti-Kickback statute, not for the violation of the underlying statute, a point that the Government correctly makes in its opposition.

The Anti-Kickback statute "criminalizes the payment of any funds or benefits designed to encourage an individual to refer another party to a Medicare provider for services to be paid for the Medicare program." *United States v. Miles*, 360 F.3d 472, 479 (5th Cir. 2004). Conspiracy to violate the Anti-Kickback statute, the crime for which Age was charged and convicted, requires that the Government prove an "unlawful agreement and at least one independent act in furtherance of the agreement." *United States v. Williams*, 474 F.2d 1047, 1047 (5th Cir. 1973). The Government is not required to prove that "the conspirators committed the substantive crime which is charged in the indictment as the object

---

[1] Age cites the statute as 42 U.S.C. § 1320a-7b(b)(21), but there is no such citation. Because the section entitled "Illegal remunerations" is codified at § 1320-7b(b)(1) – (3), and because (b)(2) refers to payment, the Court presumes that this is what Age intended.

2

of the conspiracy," nor is the Government required to "substantiate each of the overt acts alleged in the indictment." *Id.* at 1048-48 (citations omitted). Moreover, the agreement between the defendant and other conspirators "need not be proved by direct evidence, but may be inferred from concert of action." *United States v. Magee*, 821 F.2d 234, 239 (5th Cir. 1987) (citations omitted).

Age asserts that the Government was required to prove that Age "personally and directed offered or paid" anything of value to Johnson, and the Government failed to do so. Age argues that in both Count 1 and Count 2 the Government charged her with violating the Anti-Kickback Statute, and that the Government never requested nor charged the jury with an aiding and abetting instruction. Age argues that without an aiding and abetting charge or instruction, the jury had to determine whether Age directly offered or paid anything of value to Johnson, which Age asserts that Government failed to do.

Age argues that the only evidence that the Government offered was four checks written to Johnson but the Government failed to prove that Age signed the checks or that Age knew what the checks were for or to whom the checks were paid. Age contends that the Government offered no proof that she signed the checks despite having several methods at their disposal, such as retaining a handwriting expert to make a comparison of Age's signatures. Age points out that the Government's witness, Ayanna Age Alverez ("Alverez") testified that "the portion on the check indicating who it was made payable to was not [Age's] handwriting," but that Alverez had testified that she had forged Age's signature in

3

the past. (Doc. 158 at 4). Age argues that this undermines Alverez's credibility in identifying Age's signature on the checks in question. Age also points out that Johnson testified that she never received a check directly from Age and that Age never dealt with Johnson personally. Moreover, Age argues that the Government never offered an exhibit that contained an "exemplar signature" for Age nor did the Government offer an authenticated exhibit.

Additionally, Age argues that her conviction is only sustainable if "it is assumed that SLHHC and Verna Age are alter egos or if knowledge and intent can be imputed from a company to one of its employees." (Doc. 158 at 5). First, Age points out SLHHC issued the checks and not Age, who was an employee of SLHHC. Because a corporation is an independent entity, a corporation's knowledge and intent cannot be imputed to its employees. Age argues that taken in the light most favorable to the verdict, the Government showed evidence that SLHHC paid commissions to Johnson. Age argues that the structure of SLHHC "shifts the focus on acts relevant to the prosecution from employees to those with control over SLHHC." (*Id.*) Age argues that acts that would be material to potential criminal liability "would only involve an employee's personal participation in corporate-level decision making directly resulting in the supposedly unlawful renumerations (sic)." (*Id.*) Age points out that there was no attempt to discern whether she was a shareholder or an owner. Moreover, because the Anti-Kickback statute criminalizes "knowingly and willfully" offering to pay remuneration, this requires some personal involvement in order to impose

liability above and beyond being a mere employee. Age argues that there is no evidence that she was personally involved in any decision making that resulted in remunerations. Age points out that Alverez testified that Age was not an owner or a board member during the relevant time period, that Age did not participate in hiring and firing decisions, and Age did not have any conversations with Alverez or Johnson. Because the Government did not produce evidence showing that Age personally participated, Age argues that this is sufficient to justify a judgment of acquittal.

In a similar vein, Age argues that while the Government alleged she was the co-owner, she was not and the Government did not provide any evidence to corroborate that allegation. However, Age argues that using her title as Director of Nursing is insufficient to support a criminal conviction and points to the Southern District of Alabama's reasoning in *United States v. Waters*, 2012 WL 1570537 (S.D. Ala. May 3, 2012). In *United States v. Waters*, the court granted the defendant Chris Vernon's motion for judgment of acquittal and motion for new trial. Vernon, an owner and Chief Financial Officer of a specialty pharmacy, was convicted of violating the Anti-Kickback statute and the court found that he did not "knowingly and willingly violate" the Anti-Kickback statute "simply because [the pharmacy] had an illegal contract with [a health care services company]." *Id.* at *10. To sustain a conviction, there must "be evidence to support the requirement that [he] knew he was engaging in wrongful conduct by paying

5

commissions." *Id.* Age urges that the same reasoning is applicable in this instance.

Similarly, Age asserts that four checks which allegedly contain her signature do not permit a jury to determine that she had control over SLHHC. Age argues that all this shows is that she was authorized to sign checks periodically, which Age suggests is a mere administrative function. Moreover, Age suggests that her questioning that Johnson was being paid too much money evidences her lack of control at SLHHC because had she had the requisite control, she would have reduced Johnson's pay. Age asserts that this demonstrates that she did not know why Johnson was given the checks and the testimony of Alverez indicates that Age did not even know who the checks were for when she signed them.

Age devotes approximately five pages of her brief discussing three of the elements of the Anti-Kickback statute, "offer," "knowingly," and "willfully," and argues that the Government failed to prove that Age offered Johnson anything of value and that Age acted knowingly and willfully. Age argues that she was unaware of any agreement between Alverez and Johnson and thus, cannot have offered any remuneration to Johnson. Age also argues that the Government failed to prove that Age acted willfully. Age relies again on the reasoning in *Waters* (where the court found that the existence of an illegal contract was not enough to impute the knowledge and willful requirement to the defendant) and also cites *United States v. Medina,* 485 F.3d 1291 (11th Cir. 2007). In *United*

*States v. Medina*, the United States Court of Appeals for the Eleventh Circuit vacated a conspiracy conviction because there was insufficient evidence to show that Medina was "aware that the cash [was] needed to pay illegal kickbacks," nor was there sufficient evidence to show that Medina had any "knowledge of health care fraud, or participated in any scheme to defraud the U.S. government." *United States v. Medina*, 485 F.3d 1291, 1302-03 (11th Cir. 2007). Age argues that like the defendants in *Waters* and *Medina*, there is insufficient evidence to show that Age believed that the payments were for illegal kickbacks and that Age had the requisite mental state of knowing or willing.

Although Age moves for a judgment of acquittal for Count 1, conspiracy to commit health care fraud, Age does not discuss this in her motion. Age solely focuses on the insufficiency of the evidence to convict her for violating the Anti-Kickback statute. In Age's motion for a new trial, Age focuses solely on the argument that the Government failed to show that Age paid or offered anything of value to Johnson and that the Government failed to prove that Age had the requisite mental state, and thus, a new trial is mandated in the event that judgment of acquittal is not entered.

In the Government's opposition, the Government points out that Age has misread and/or misunderstood the charges against her. Notwithstanding this, the Government contends that the evidence is "more than sufficient" to sustain her conviction on Count 2, conspiracy to violate the Anti-Kickback statute, and to

7

deny Age's motion for judgment of acquittal on Count 1, conspiracy to commit health care fraud, despite the jury being unable to render a verdict.

The Government first argues that Johnson testified that Age admitted the patients Johnson recruited and for whom she received kickbacks and that Age knew that Johnson was being paid kickbacks. Johnson also testified that Age questioned the amount of money that Johnson was being paid. The Government asserts this evidence shows that Age knew that Johnson was being paid for referrals.

Moreover, the Government points to Alverez's testimony, in which she stated that Age knew that SLHHC was using patient recruiters and that she knew how much the recruiters were being paid. Additionally, Alverez testified that after she, Age, and the others were indicted, Age "attempted to convince Alverez to conceal Age's involvement in the conspiracy by lying to the government about her role in the conspiracy." (Doc. 163 at 6). The Government argues that this is evidence of Age's intent, citing *United States v. Davis*, 490 F.3d 541, 549 (6th Cir. 2007) (finding that "[i]ntent can be inferred from efforts to conceal the unlawful activity") (citations and quotations omitted).

The Government argues that the evidence produced at trial corroborates Alverez and Johnson's testimony. The Government points to the signed checks and a note written by Age "regarding referrals submitted to SLHH[C] pursuant to kickbacks paid to Mary Johnson: 'These were turned in today by Mary- Please

check numbers.'" (Doc. 163 at 6). The Government argues that these documents show Age's participation in the conspiracy to pay kickbacks.

Additionally, the Government points out that the jury was permitted to consider any profits Age gained from her participation in the conspiracy when determining her guilt, if any. According to evidence produced by the Government, during the relevant time period, Age received "at least $621,113 in salary, checks, and other payments to her or on her behalf" from SLHHC. (Doc. 163 at 7). The Government argues that the jury was permitted to utilize this evidence to support an inference of Age's intent. *See Davis*, 490 F.3d at 549 ("Intent can be inferred from efforts to conceal the unlawful activity, from misrepresentations, from proof of knowledge, and from profits." (citing cases).

The Government criticizes Age's reliance on *Waters* and *Medina*, arguing that there is substantial evidence here, unlike in *Waters* and *Medina*, that Age knew that recruiters were being paid. First, the Government states that Age verified Medicare numbers obtained by the recruiters. Additionally, the Government asserts that Age signed multiple fraudulent medical forms used to bill Medicare and that Alverez testified that Age changed the forms to increase the amount billed. Moreover, Alverez testified that Age would sometimes certify patients for services without seeing them. The Government argues that this evidence, combined with Age's personal profiting from the conspiracy, unlike the defendants in *Waters* and *Medina*, establish sufficient evidence to show that Age knowingly and willingly participated in a conspiracy to pay kickbacks to recruiters.

Additionally, the Government points out that Age fails to address Count 1, the charge of conspiracy to commit health care fraud, in her motion for judgment of acquittal but argues that notwithstanding her failure to make arguments, the evidence shows that she willfully participated in this conspiracy. Alverez testified that Age trained nurses, who later admitted patients who did not need home health care services. Moreover, Alverez testified that Age changed patient records so that SLHHC could bill more than what was necessary and that Age completed recertification evaluations[2] without seeing the patients to determine whether they were actually eligible. Finally, the Government points out that Age's attempt to have Alverez lie for her is further evidence of her participation in the conspiracy.

II.

Pursuant to Rule 29 of the Federal Rules of Criminal Procedure, a court may set aside a guilty verdict and enter a judgment of acquittal, or if the jury has not returned a verdict, the court may still enter a judgment of acquittal. Fed. R. Crim. P. 29. A Rule 29 motion for acquittal "tests only the sufficiency of the evidence introduced at trial to support the crime charged." *United States v. Hope*, 487 F.3d 224, 225 (5th Cir. 2007). When considering the sufficiency of the evidence, the court must determine whether "a rational jury, viewing the evidence in the light most favorable to the prosecution, could have found the essential

---

[2] The Government points out that in addition to Alverez's testimony, documentary evidence shows that Age falsified medical forms and signed these documents.

10

elements of the offense to be satisfied beyond a reasonable doubt." *Miles*, 360 F.3d at 476. *See also United States v. Burton*, 126 F.3d 666, 669 (5th Cir. 1997) (requiring the court to view the "evidence and all inferences to be drawn from it in the light most favorable to the verdict to determine if a rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."). "The evidence need not exclude every reasonable hypothesis of innocence or be wholly inconsistent with every conclusion except that of guilt, and the jury is free to choose among reasonable constructions of the evidence." *United States v. Bermea*, 30 F.3d 1539, 1551 (5th Cir. 1994) (citation omitted). A reviewing court must assess "whether the trier of fact made a rational decision to convict or acquit, not whether the fact finder correctly determined the defendant's guilt or innocence." *United States v. Jaramillo*, 42 F.3d 920, 923 (5th Cir. 1995). However, the court will reverse a conviction if the evidence "construed in favor of the verdict gives equal or nearly equal or nearly equal circumstantial support to a theory of guilt and a theory of innocence of the crime charged." *Id.* (citations and quotations omitted).

Pursuant to Rule 33 of the Federal Rules of Criminal Procedure, a court may vacate a judgment and grant a new trial "if the interest of justice so requires." Fed. R. Crim. P. 33(a). When considering a Rule 33 motion, the court "may weigh the evidence and may assess the credibility of the witnesses during its consideration of the motion for new trial." *United States v. Robertson*, 110 F.3d 1113, 1117 (5th Cir. 1997). However, a court may not "reweigh the evidence

and set aside the verdict simply because it feels some other result would be more reasonable." *United States v. Arnold*, 416 F.3d 349, 360 (5th Cir. 2005) (quotations and citation omitted). "The evidence must preponderate heavily against the verdict, such that it would be a miscarriage of justice to let the verdict stand." *Robertson*, 110 F.3d at 118. Rule 33 motions are infrequently granted, "unless warranted by exceptional circumstances." *United States v. Tarango*, 396 F.3d 666, 672 (5th Cir. 2005) (quotations and citation omitted). The movant bears the burden of showing that a new trial is warranted. *United States v. Soto-Silva*, 129 F.3d 340, 343 (5th Cir. 1997).

III.

The Court finds that Age has not shown that an entry of a judgment of acquittal pursuant to Rule 29 of the Federal Rules of Criminal Procedure for either Count 1, conspiracy to commit health care fraud, or Count 2, conspiracy to violate the Anti-Kickback statute, is warranted. Although Age focuses on the insufficiency of the evidence to convict her of violating the Anti-Kickback statute, Age was not convicted of this charge. The Court finds that there was "sufficient evidence introduced at trial to support the crime charged." *Hope*, 487 F.2d at 225. A rational jury could conclude based on the evidence introduced at trial that Age participated in a scheme to pay kickbacks to patient recruiters, and this Court will not disturb the jury's verdict. Similarly, there was sufficient evidence introduced at trial from which a reasonable jury could conclude that Age participated in a scheme to commit health care fraud. Thus, the Court will not

disturb the jury's verdict on Count 2 and the Court will not enter a judgment of acquittal on Count 1, the charge upon which the jury hung.

Furthermore, the Court finds that Age has not shown that it would be a "miscarriage of justice to let the verdict stand," and that a new trial is warranted pursuant to Rule 33 of the Federal Rules of Criminal Procedure. *Robertson*, 110 F.3d at 118. The evidence does not "preponderate heavily against the verdict," and thus, this Court will let the verdict stand. *Id.*

Accordingly, the Defendant's Renewed Motion for Judgment of Acquittal and Motion for New Trial are DENIED. (Docs. 158 and 157).

Signed in Baton Rouge, Louisiana on November 26, 2012.

**JAMES J. BRADY, DISTRICT JUDGE**
**MIDDLE DISTRICT OF LOUISIANA**